UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KATHRYN M. LEAVITT,

                Plaintiff,

     v.                                                **DECISION AND ORDER**
                                                                   08-CV-731S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1.      Plaintiff Kathryn M. Leavitt challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since January 1, 2005, due to back, neck, and right knee pain.[1] Plaintiff contends that because her impairments render her unable to work, she is entitled to disability benefits under the Act.

2.      Plaintiff filed an application for disability insurance benefits ("DIB") on January 10, 2005. (R. at 80-82.) Her application was denied initially, after which she requested a hearing before an ALJ. That hearing took place on May 18, 2007. The ALJ considered Plaintiff's case *de novo*, and on January 28, 2008, issued a written decision denying Plaintiff's application for benefits. (R. at 16-30.) On September 8, 2008, the Appeals Council denied Plaintiff's request for review. (R. at 3-5.) Plaintiff filed the current civil action challenging Defendant's final decision on October 2, 2008.[2]

---

[1] Plaintiff originally alleged disability since March 20, 2003 but later amended her alleged disability onset date to January 1, 2005.

[2] The ALJ's decision became the Commissioner's final decision in this matter after the Appeals Council denied Plaintiff's request for review.

3. The parties subsequently filed Motions for Judgment on the Pleadings.[3] After full briefing, this Court deemed oral argument unnecessary and took the motions under advisement on May 6, 2009. For the following reasons, Defendant's Motion for Judgment on the Pleadings is granted and Plaintiff's Motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence

---

[3] Defendant and Plaintiff both filed their respective Motions for Judgment on the Pleadings on March 16, 2009 (Docket No. 4 and 6.)

2

may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. § § 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts: First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since January 1, 2005, the alleged onset of disability date, except in September and December 2006 (R. at 20); (2) Plaintiff's impairments are "severe" within the meaning of the Act (R. at 20-21)[4]; (3) Plaintiff's impairments do not meet or equal in severity, the criteria specified for any impairment listed in Appendix 1, Subpart P, Regulation No. 4 (R. at 21-25); (4) Plaintiff retains the residual functional capacity ("RFC") to perform the full range of unskilled sedentary exertion work (R. at 25-29); and (5) based on her age, education, past relevant work experience, and residual functional capacity, Plaintiff is capable of performing work that exists in significant numbers in the national economy. (R. at 29-30). Ultimately, the ALJ concluded that Plaintiff was not under a disability as defined by the Act at any time from March 20, 2003 through the date of the ALJ's decision. (R. at 30.)

10. Plaintiff advances four challenges to the ALJ's decision. First, Plaintiff argues

---

[4] Specifically, the ALJ found that Plaintiff has the following severe medically determinable impairments: post-traumatic cervicalgia/occipital headaches with straightening of the normal cervical lordosis; degenerative disc changes and a mild disc bulge at T10-T11 of the thoracic spine with Scheurmann's disease and at the adjacent endplates of T11-T12; a herniated disc at L5-S1, retroisthesis of L4 on L5 with a diagnosis of herniated L4-L5 disc made in February 2006; and chronic patellofemoral syndrome. (R. at 20-21.)

that the ALJ erred in according inadequate weight to the opinions of her treating physician, William N. Capicotto, M.D., who opined that she be limited to sedentary exertional work, but would need to change positions frequently and would be limited to four-hour shifts. (Docket No. 6, p. 5.) Plaintiff therefore argues that this case must be remanded so that Dr. Capicotto's opinion can be properly weighed. (Id. p. 6.)

According to the "treating physician rule,"[5] the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02 Civ. 6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). Although the Commissioner must "always give good reasons [] for the weight [ascribed to the] treating source's opinion," 20 C.F.R 404.1527(d)(2), an ALJ need not always "reconcile explicitly every conflicting shred of medical evidence." Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir, 1983).

Here, this Court finds no error in the ALJ's treatment of Dr. Capicotto's opinion. First, despite Plaintiff's contention, the ALJ specifically considered Dr. Capicotto's recommendation that Plaintiff be limited to four-hour shifts and sedentary work. (R. at 28) ("Her doctor stated that standing for 4 hours was causing additional pain and that she should find a sedentary job such as an office position or secretarial job . . . .") Although Plaintiff may disagree with the ALJ's refusal to credit Dr. Capicotto's determination, it is clear that the ALJ considered and weighed this evidence. Thus, remand on this basis is

---

[5] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

5

unwarranted.

What is more, Plaintiff fails to account for the context of Dr. Capicotto's recommendation. For instance, Dr. Capicotto instructed that Plaintiff be limited to four-hour shifts *"at her new job."* (R. at 183) (emphasis added). Plaintiff's new job was a cashier at Tops Markets that required her to be on her feet for the entire shift. (R. at 179, 183.) But when evaluating Plaintiff's RFC, the ALJ was mindful of her limited ability to stand, as the ALJ found that Plaintiff could work eight hours per day in a "sedentary" position, which, by definition, requires standing only "occasionally." 20 C.F.R. § 404.1567(a); (R. at 25.) Accordingly, Plaintiff's first challenge is rejected.

11. Second, Plaintiff argues that the ALJ erred by not properly weighing her subjective complaints about her physical condition. (Docket No. 6, p. 6.) Plaintiff maintains that her complaints are entitled to "great weight" because they are supported by the objective medical evidence. (Id. p. 7.) Plaintiff also argues that, upon weighing her credibility, the ALJ erred by failing to consider her work history and improperly evaluated her daily activities. (Id. pp. 8-10.)

Credibility determinations are generally reserved to the Commissioner, not the reviewing court. Aponte v. Sec'y of Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984) (holding that it is the job of the Commissioner and not the reviewing court to make determinations on the credibility of witnesses); Carrol v. Sec'y of Health and Human Svcs., 705 F.2d 638, 642 (2d Cir. 1982) (similar). The ALJ's credibility determination must be supported by substantial evidence. See Califano, 615 F.2d at 27. The ALJ is required to set forth the essential considerations upon which his or her decision is based, with sufficient particularity to enable the reviewing court to decide whether the disability determination was supported by substantial evidence. See Mongeur v. Heckler, 722 F.2d

1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he . . . mention[ ] every item of testimony presented to him or . . . explain[ ] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.")

After thoroughly reviewing the ALJ's decision, and the record as a whole, this Court finds that the ALJ's credibility determination is supported by substantial evidence. First, the ALJ thoroughly explained why the objective medical evidence did not support Plaintiff's subjective complaints. (R. at 25-29). Second, while the ALJ did not discuss Plaintiff's entire work record, the ALJ found that her recent return to work, which "involved more than sedentary exertion," belied her disability claim and undermined her credibility. (R. at 29.) Lastly, the ALJ adequately discussed the reasons why Plaintiff's daily activities were inconsistent with her claim of being disabled. (R. at 23-29.)[6] Accordingly, this Court finds no err with respect to the ALJ's credibility determination.

12. Third, Plaintiff argues that the ALJ erred by not eliciting the testimony of a vocational expert to determine whether jobs exist that are consistent with her restrictions and limitations. Plaintiff argues that her non-exertional limitations are significant, and therefore, the ALJ should have consulted a vocational expert. (Docket No. 6, p. 10.)[7]

Defendant has the burden of establishing that Plaintiff is independently capable of performing work. See Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984)("once the claimant has established a prima facie case by proving that his impairment prevents his

---

[6] Those activities include the fact that, following the date Plaintiff alleged she became disabled, she enrolled and took classes at Erie County Community College and was working as a cashier at Tops supermarkets. (R. at 23.)

[7] Specifically, Plaintiff argues that she needs to "lay down five to six hours in an eight hour day, arrive to work late and leave early, take unscheduled or extra work breaks and [] change positions frequently." (Docket No. 6, p. 10.) The ALJ, however, did not adopt any of these claims when determining Plaintiff's restrictions. (R. at 25-26.)

return to his prior employment, it then becomes incumbent upon the [Commissioner] to show that there exists alternative substantial gainful work in the national economy which the claimant could perform").

In the ordinary case, this burden is satisfied by resorting to the applicable medical vocational guidelines, also known as "the Grids." See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986). But if a claimant's non-exertional impairments *significantly* impact her ability to perform work, then the Grids in all likelihood will not accurately determine disability status because they fail to take into account the claimant's non-exertional impairments. See id. at 605; Cangelosi v. Chater, No. 94 Civ. 2694, 1996 WL 663161, *5 (E.D.N.Y. Nov. 5, 1996) ("applicability of the Grids should be determined on case-by-case basis"). Where it is established that a claimant's non-exertional limitations are significant, "the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." Bapp, 802 F.2d at 603.

Here, the ALJ found that Plaintiff did not suffer from any non-exertional limitation, let alone suffer to a significant extent from one. (R. at 25-26.) Specifically, the ALJ held that Plaintiff "is able to: understand, follow, and carry out simple directions and instructions; perform simple tasks; maintain attention and concentration sufficiently to perform simple unskilled work; maintain a regular schedule; make simple judgments on work-related decisions; and relate adequately with others." (R. at 26); see also Ortiz v. Shalala, No. 93 Civ. 4501, 1994 WL 481921, *2 n.1 (S.D.N.Y. Sept. 2, 1994) ("A nonexertional impairment is one which does not directly affect the ability to sit, stand, walk, lift, carry, push or pull."). Thus, the ALJ's use of the Grids was not error.

13. Finally, Plaintiff argues that the ALJ erred by failing to recontact one of her treating physicians, Eugene Gosy, M.D., a pain specialist. Plaintiff contends that the ALJ

8

should have recontacted Dr. Gosy because his opinion is ambiguous.

Recontacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record. 20 C.F.R. § 404.1512(e). Additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1512(e)(1); Rosa v. Callahan, 168 F.3d 72, 80 (2d Cir. 1999); Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998). But the ALJ may make a disability determination even if "the evidence . . . , including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, [so long as the ALJ weighs] all of the evidence and see[s] whether [she] can decide whether [plaintiff is] disabled based on the evidence." 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ specifically considered Dr. Gosy's opinion, as well as all of the medical evidence of record, and found that there was no inadequacy or ambiguity in the medical evidence taken as a whole that prevented her from making a disability determination. Rather, upon consideration of all the medical evidence, the ALJ concluded that Plaintiff was not disabled. Consequently, the ALJ was under no obligation to recontact Dr. Gosy.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 4) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: January 29, 2010
      Buffalo, New York

                                        <u>/s/William M. Skretny</u>
                                        WILLIAM M. SKRETNY
                                            Chief Judge
                                      United States District Court